Dear Senator Boissiere:
You have requested an opinion of this office relative to the receipt of bids by the Ernest N. Morial New Orleans Hall Authority, for the project known as "Phase IV" of the Convention Center.
Your request specifically asks for an answer to the following questions:
Are the requirements set forth in the Bid Forms Exhibit #2 and Article 14.1 of Instructions to Bidders mandatory?
Does Exhibit #2 and Article 14 of Instructions to Bidders mandate the attachment of certificates or statement of insurability as to subpart 11.3 of "Article 11 Insurance and Bonds" as well as other subparts of Article 11?
If evidence of Builders Risk Insurance is required, but not furnished with the bid, is the requirement ($275,000,000 property damage coverage) subject to waiver as an informality?
Perhaps a discussion of the meaning and purpose of the Louisiana bid process would be in order before answering the above stated questions. The public bid process in Louisiana is governed by La.R.S. 38:2212. The purpose of that statute is to insure fundamental fairness to the bidders in the process by setting forth specific requirements for particular bids. By requiring advertising in the obtaining of competitive bids, the tax paying citizens are protected against the awarding of public contracts through favoritism, fraud and possibly exorbitant and excessive prices. See Mickey O'Conner General Contractor, Inc. v. City of WestWego, 804 So.2d 128 (La.App. 5th Cir. 2001). It is a prohibitory law and its purpose is to prevent public officials from awarding contracts on the basis of favoritism.
This process is carried out through an agency requesting bids on a particular job by promulgating requirements or instructions for the particular bid. These instructions provide and instruct the bidders on the job and the special requirements for the job. The instructions are contained in the construction documents and are termed the "Instructions to Bidders".
The bid form is the actual document which describes and depicts the requirements for the job. Bidders are required to fill out and to present their Bid Form Proposals by a certain date. The law then requires the entity to open the documents and to award the contract to the lowest responsible bidder. In the case of the Convention Center, the bidders were given bid documents which included, among other things, the Instructions to Bidders, Bid Forms, and the Supplementary Conditions. These documents have the force and effect of law between the entity requesting the bid and the bidders. These instructions are contained in the construction documents and are termed the "Instructions to Bidders." By enacting the Public Bid Law, the Legislature balanced the competing policy interest, as is their role, and found that it is in the best interest of the taxpayers of Louisiana to award contracts in favor of a bidder who had complied with the bidding requirements in all respects. Such a policy prevents fraud and favoritism which is, after all, the ultimate goal of the public bidding system and encourages fair and equal competition.
In answer to question #1 we must consider that the provisions of the statutes requiring competitive bidding in the letting of municipal contracts are for the purpose of inviting competition, to guard against favoritism, fraud and corruption, and to secure the best work or supplies at the lowest price practicable. They were enacted for the benefit of property holders and taxpayers, and should be administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest. These provisions are strictly construed by the courts and will not be extended beyond their reasonable purpose. Competitive bidding provisions must be read in light of the reason for their enactment, or they could be applied in such a way as to deny a municipality or public authority the ability to deal with problems in a sensible, practical way.
Inherent in the bidding process is the requirement that the public body shall prescribe a common standard on all matters that are material to the proposals. To that end the interested person may bid intelligently and will be induced to bid by the promise of impartiality. No scheme or device, which imposes limitations, not applicable to all bidders alike, should be tolerated. A public entity cannot waive deviations that are substantive in nature when awarding a public contract to the lowest responsible bidder. Boh Brothers Construction Co., L.L.C. v. Departmentof Transportation and Development, 698 So.2d 675 (La.App. 1st Cir. 1997).
La.R.S. 38:2212A(1)(b) provides:
 The provisions and requirements of this Section, those stated in the advertisement for bids, and those required on the Bid Form shall not be considered as informalities and shall not be waived by any public entity. (emphasis added).
In this case, the Bid Form stated that, "bidders shall attach insurance certificates or statement of insurability from bidders insurer to this page". The substance of this requirement is set out in Art. 14 of the "Instructions to bidders: Section 14.1 of that document which provides:
 Bidders shall deliver Certificates of Insurance or statement of insurability acceptable to the Owner with their bids, to demonstrate compliance with Article 11 of the Supplementary Conditions.
Section 14.2 of the article provides:
 Failure of the Successful Bidder to deliver said Certificates of statement of insurability with the Bid may result in the Bid being deemed incomplete and non-responsive. In the event of such failure, the Owner reserves the right to offer the Contract to the next lowest responsive Bidder or re-advertise the project to request a completely new set of bids."
Thus, the documents which set out the requirements for the phase IV of the Convention Center required all of the bidders to attach certificates of insurance or statements of insurability to the bid.
The word "shall" as used in statutes, contracts, or the like, is generally imperative or mandatory. In common or ordinary parlance, the term "shall" is a word of command, and one which must be given a compulsory meaning. It has the significance of excluding the idea of discretion, and operates to impose a duty which must be enforced, particularly when used in cases involving public policy or the public interest. Given the use of the term "shall" in these documents, it is our opinion that as a matter of law, the requirements set forth in the Bid Form Exhibit No. 2 and Art. 14.1 of the Instructions to Bidders aremandatory.
A review of the relevant documents indicates that the answer to question #2 must be in the affirmative. Specifically, Exhibit No. 2 provides that the bidder shall attach the insurance certificate or statements of insurability from bidder's insured to this page, and Art. 14 of the Instructions to Bidders provides that the bidders shall deliver certificates of insurance or statement of insurability acceptable to the owner with their bids to demonstrate compliance with Art. 11 of the Supplementary Conditions. This sentence clearly indicates that the bidder is required to deliver the certificates of insurance or statement of insurability with regard to all of the particular insurances listed in Art. 11 of the Supplementary Conditions. This also requires the attachment of all certificates of insurance or statements of insurability for all of the insurance coverage required and the Supplementary Conditions found in Art. 11. Art. 14 also would require a particular type of coverage to the extent that subpart 11.3 provides that there should be a particular type of coverage.
In answer to question #3 we must point out that Louisiana law provides that a public entity may waive deviations that are not substantive in nature; however, it may not treat substantive requirements of the Bid Law, the advertisement for bid, and the Bid Forms as mere informalities in order to justify its decision to waive a deviation in a bid. In this case, the Bid Form and the Construction Documents both contain the word "shall". When reading these documents they must be given the interpretation that best conforms to the purpose of the law and the public interest. Clearly, the wording of these provisions connotes that the inclusion of the certificates of insurance or the statements of insurability in compliance with all of Art. 11 is mandatory. The bidders are not provided with a choice as to which insurance to provide, but instead are instructed to demonstrate compliance with "Art. 11 of the Supplementary Condition." Indeed, the bidders are reminded in section 14.2 of article 14 that the failure of the successful bidder to deliver said certificates or statements of insurability with the bid may result in the bid being deemed incomplete and non-responsive. That section further provides that in the event of such failure, the owner reserves the right to offer the contract to the next lowest responsive bidder or re-advertise the project to request a completely new set of bids. This section does not provide the entity with the ability to waive a particular bidder's failure to provide any one of the insurance coverages listed in Art. 11. This would include a prohibition on the entity from waiving a bidder's failure to provide the coverage enumerated in section 11.3 of Art. 11. Consequently, the failure of a bidder to furnish a certificate of insurance or statement of insurability with regard to section 11.3 of Art. 11 is a substantive deviation from the requirements of the construction documents which cannot be waived by the terms of the documents. See La.R.S. 38:2211
et seq. and Wallace Drennan, Inc. v. Sewageand Water Board of New Orleans, 798 So.2d 1167 (La.App. 4th Cir. 2001).
This conclusion is also consistent with section 4 of the Instructions to Bidders. That section entitled "Interpretation or Correction of Bid Documents provides at section 4.5, that should there be any discrepancy in the information contained in these documents, the more stringent requirements shall cover it." This section mandates the inclusion of all of the insurances set out in section 11. Accordingly, failure to submit the certificate of insurance or the statement of insurability for Builders Risk Insurance cannot be waived by the board. When this section is interpreted in light of the purpose of the statute to provide protection to the tax paying public it clearly leads to the conclusion that the bidders on this particular job were required to produce copies of all insurances enumerated in the subparts of Art. 11 of the Supplementary Conditions.
We trust that we have sufficiently answered the questions contained in your opinion request.
Very truly yours,
 RICHARD P. IEYOUB
Attorney General
RPI:mmn